10-2380-cr
United States v. Jimenez

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 19th day of October, two thousand eleven.

PRESENT:
            ROGER J. MINER,
            PIERRE N. LEVAL,
            PETER W. HALL,
                        *Circuit Judges*.

_____

UNITED STATES OF AMERICA,

                        *Appellee,*

            v.                                                          No. 10-2380-cr

OMAR GONZALEZ, HUGO VENTURA, IGNACIO BALBUENA
a/k/a "La Perra," a/k/a La Perra.

                        *Defendants,*

JOSE JIMENEZ,

                        *Defendant-Appellant*.

_____

FOR DEFENDANT-APPELLANT:            RAMON A. PAGAN, Bronx, New York.

FOR APPELLEE:                          BENJAMIN ALLEE, Assistant United States Attorney
                                       (Brent S. Wible, Assistant United States Attorney, *of
                                       counsel*) *for* Preet Bharara, United States Attorney
                                       for the Southern District of New York, New York,
                                       New York.

Appeal from a judgment of the United States District Court for the Eastern District of New

York (Seibel, *J.*).  **UPON DUE CONSIDERATION**, **IT IS HEREBY ORDERED,**

**ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

On October 9, 2009, following a jury trial, defendant-appellant Jose Jimenez was

convicted of conspiracy to possess cocaine with the intent to distribute in violation of 21 U.S.C. §

846(b)(1).   He now appeals his conviction alleging that the district court erred in admitting, under

Rule 404(b) of the Federal Rules of Evidence, evidence of two prior bad acts.   He also challenges

the sufficiency of the evidence proving his membership in the drug conspiracy and his knowledge

of the conspiracy's purpose.   We assume the parties' familiarity with the underlying facts and

procedural history, which we reference only where necessary to explain our decision.   Each of

Jimenez's arguments are addressed in turn.

**A.  Prior Acts**

We review a district court's decision to admit evidence of prior bad acts under Rule 404(b)

for abuse of discretion, "which we will find only if the judge acted in an arbitrary and irrational

manner."   *United States v. Lombardozzi*, 491 F.3d 61, 78-79 (2d Cir. 2007).   District courts, in

determining whether to admit "other act" evidence under Rule 404(b), follow our "'inclusionary'

approach," meaning such evidence may be admitted under Rule 404(b) "for any purpose other than

to demonstrate criminal propensity."   *United States v. LaFlam*, 369 F.3d 153, 156 (2d Cir. 2004)

(per curiam).   "Other acts evidence" is admissible to demonstrate, *inter alia,* knowledge,

2

opportunity, preparation, plan, and absence of mistake or accident. *See* Fed. R. Evid. 404(b). In determining whether a district court properly admitted "other act" evidence, we consider "whether (1) it was offered for a proper purpose; (2) it was relevant to a material issue in dispute; (3) its probative value is substantially outweighed by its prejudicial effect; and (4) the trial court gave an appropriate limiting instruction to the jury if so requested by the defendant." *LaFlam*, 369 F.3d at 156.

Jimenez argues that the district court exceeded its discretion by admitting unfairly prejudicial testimony that (1) about six months before his arrest, he offered to arrange an unrelated drug deal using "secure vehicles," and (2) in 2006, he was stopped by police officers while towing a vehicle equipped with a secret compartment or trap containing more than $100,000 in cash. Jimenez contends that this evidence was not offered for a proper purpose because at trial he did not disclaim knowledge of traps in general, or of the particular trap in the Jeep used in the charged offense, but maintained only that he was not a member of the conspiracy and did not know its object.

Jimenez's representation on appeal that he did not disclaim knowledge of the trap in the Jeep is not entirely accurate. Following his arrest, Jimenez told investigators that he had been picked up earlier that day in the Bronx by a person whose name he did not know and taken to the mall in Yonkers in the BMW. He maintained that he had been asked by Ventura to drive the Jeep to Buffalo to pick up a tractor-trailer. Jimenez further told officers that he did not know who owned the Jeep and argued at trial that Ventura's testimony concerning Jimenez's operation of the trap was not credible. Additionally, at no point during trial did Jimenez concede knowledge of the trap. Indeed, Jimenez's knowledge remained the focus of the defense, and he argued to the

3

jury that the government failed to prove his knowledge of the drug objective of the conspiracy. In these circumstances, it was wholly permissible for the court to admit evidence of Jimenez's proposal of a drug deal involving a similar "secure vehicle" to rebut his contention that he had no awareness of the drug objective of the conspiracy. *See United States v. Peterson,* 808 F.2d 969, 974 (2d Cir. 1987) (admission of similar act evidence is not improper where defendant did not concede unequivocally the element of knowledge and argued for acquittal on the basis of lack of knowledge). Nor did the district court abuse its discretion in admitting the evidence of the 2006 traffic stop with a similarly secure vehicle. While it is true that this evidence had less probative value than the evidence of his solicitation of a drug deal, it also carried less risk of prejudice, as it included no showing of illegal conduct.

**B.        Sufficiency of the Evidence**[1]

In order to convict a defendant of the crime of conspiracy, the government must demonstrate that the defendant and one or more persons entered into a joint enterprise for an unlawful purpose, with awareness of its "general nature and extent." *See United States v. Huezo*, 546 F.3d 174, 180 (2d Cir. 2008). The government is not required to "show that the defendant knew all of the details of the conspiracy," provided it shows that the defendant "knew its general nature and extent." *Huezo*, 546 F.3d at 180 (internal quotation marks omitted). Title 21 of the United States Code provides that it is "unlawful for any person knowingly or intentionally" to "distribute" or to "possess with intent to . . . distribute . . . a controlled substance," 21 U.S.C. §

---

1 The government notes in its brief that the district court improperly charged the jury that it needed to find that it was reasonably foreseeable to Jimenez that the offense involved at least five kilograms of cocaine. Such a finding is not required in this Circuit when the government seeks to hold a defendant accountable for drug transactions in which the defendant directly and personally took part. *United States v. Andino*, 627 F.3d 41, 47 (2d Cir. 2010). The sufficiency of the evidence is analyzed not under the erroneous jury instruction but the applicable law.

841(a)(1) (2006), or to "conspire [ ] to commit" such an offense, *id.* § 846. The government therefore must demonstrate that Jimenez knew that the charged conspiracy involved a controlled substance. *United States v. Lorenzo*, 534 F.3d 153, 159–62 (2d Cir. 2008).

The government can make this showing through circumstantial evidence. *Huezo*, 546 F.3d at 180 (citing *United States v. Stewart*, 485 F.3d 666, 671 (2d Cir. 2007)). "Nevertheless, where the Government seeks to prove a fact that is also an element of the offense by circumstantial evidence, [w]e must . . . be satisfied that the inferences are sufficiently supported to permit a rational juror to find that the element, like all elements, is established beyond a reasonable doubt." *United States v. Friedman*, 300 F.3d 111, 124 (2d Cir. 2002) (internal quotation marks omitted; alteration in original).

Viewing the evidence, in addition to the prior bad acts noted above, in the light most favorable to government and drawing every inference in its favor, as we must, the jury could reasonably have found the following relevant facts. *United States v. Chavez,* 549 F.3d 119, 124 (2d Cir. 2008). On September 12, 2008, Jimenez arrived at a shopping mall in Yonkers, New York driving a Jeep. He lent the Jeep to co-conspirator Hugo Ventura and instructed Ventura on how to operate the Jeep's trap, which was located behind the rear seat. Ventura drove the Jeep back to another co-conspirator's house where he and others opened the trap and loaded it with $135,000 and a backpack containing a loaded gun. Ventura and the others were unable to close the trap and had to drive the Jeep back to the mall with the trap open. Jimenez waited in the mall parking lot until Ventura returned. At the mall, Jimenez, at another's direction, got into the driver's seat without examining the trap's contents or looking in the rear of the Jeep and closed the trap. At no point did Jimenez ask Ventura about the trap's contents or look in the trap himself.

5

Jimenez did inquire as to where they were going but was instructed simply to drive the Jeep and follow his unindicted co-conspirator Diobel Sosa. Jimenez drove the Jeep with Ventura riding shot-gun and communicating with Sosa via the press-to-talk feature of Ventura's cell phone. The men drove away from the mall and headed north on the New York State Thruway. Members of a DEA Task Force, who had been monitoring the activities at the mall, followed the Jeep and asked a New York State Trooper to pull it over. The trooper pulled the Jeep over just as it crossed the Tappan Zee Bridge. Ventura testified that Jimenez instructed him to remain calm, and after the two were placed in the back of the police cruiser, Jimenez told Ventura to explain to the police that they were driving to Buffalo, New York to look for a truck. Ultimately, the DEA searched the vehicle, discovered the trap and its contents, and arrested several of those involved, including Jimenez.

After he was arrested, Jimenez told the investigating officers that earlier that day he had been picked up in the Bronx by an unknown person driving a BMW who later brought him to the mall. Jimenez also told police that Ventura had asked him to go to Buffalo to pick up a tractor-trailer because Jimenez holds a commercial driver's license and Ventura does not. Jimenez disclaimed any knowledge of the cash and gun and said that he did not know who owned the Jeep.

The Jeep was registered under the name Alonso Alverdi with an address of an apartment building in New Rochelle, New York. Derek Smith, doorman of the apartment building, testified that Jimenez lived in the apartment and that he had seen Jimenez drive a black Jeep. The cellphone seized from Jimenez on September 12, 2008 had the same number as that kept by the apartment management as a contact number for Alverdi and the apartment generally.

6

"We defer to the jury's determination of the weight of the evidence and the credibility of the witnesses, and to the jury's choice of the competing inferences that can be drawn from the evidence." *United States v. Morrison,* 153 F.3d 34, 49 (2d Cir. 1998). The government's proof "need not eliminate every possible theory of innocence," *United States v. Rosenthal,* 9 F.3d 1016, 1024 (2d Cir. 1993), and in assessing whether the government has met its burden, we view pieces of evidence "not in isolation but in conjunction," *United States v. Maldonado-Rivera,* 922 F.2d 934, 978 (2d Cir. 1990). "The conviction must be upheld if '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Chavez,* 549 F.3d at 124 (quoting *Jackson v. Virginia,* 443 U.S. 307, 319 (1979) (emphasis in *Jackson* )).

These principles apply whether the evidence being reviewed is direct or circumstantial. *See Glasser v. United States,* 315 U.S. 60, 80 (1942). At trial, there was sufficient circumstantial evidence, including the prior bad acts, demonstrating that Jimenez knew about secured compartments in vehicles and that those compartments could be used for transporting cash and drugs. Although there was no direct evidence concerning Jimenez's relationship with his co-conspirators, he nonetheless knew to arrive at the mall with the Jeep specially equipped with a trap, expressed no misgivings about lending the Jeep to Ventura and instructing him in the operation of the trap, and later drove the Jeep to a location of which he was unaware. Furthermore, Jimenez gave false exculpatory statements to law enforcement following his arrest and approached Ventura while the two were in jail and "warned" Ventura to think carefully about what he was going to say as further evidence of consciousness of guilt. Accordingly, a jury reasonably could find from the evidence at trial that Jimenez knew that the conspiracy involved the distribution of a controlled substance.

7

We have considered Jimenez's remaining arguments on appeal and conclude they are without merit.   For the reasons set forth above, the judgment is hereby **AFFIRMED**.


FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk