**UNITED STATES of America**

v.

**Roohid HAKIMI, Defendant.**

**No. 8:11–CR–191.**

United States District Court, N.D. New York.

Dec. 22, 2011.

Order Denying Reconsideration
Dec. 29, 2011.

Richard S. Hartunian, Daniel C. Gardner, Esq., Ass't United States Attorney, Plattsburgh, NY, for United States Attorney.

Office of Mark J. Sacco, Mark J. Sacco, Esq., Schenectady, NY, for Defendant.

### MEMORANDUM–DECISION and ORDER

DAVID N. HURD, District Judge.

## I. INTRODUCTION

On September 7, 2011, a three-count superseding indictment was filed charging the defendant Roohid Hakimi ("defendant" or "Hakimi") with conspiracy to possess with the intent to distribute and to distribute a controlled substance (Count One) and attempted possession with the intent to distribute a controlled substance (Count Three). A jury trial was held on December 13–15, 2011. At the close of the government's proof, defendant moved for a judgment of acquittal on both counts pursuant to Federal Rule of Criminal Procedure 29(a). Decision was reserved pursuant to Rule 29(b). Defendant indicated that he did not intend to testify or present any witnesses or evidence, and the defense rested. Defendant then renewed his Rule 29(a) motion, and decision was again reserved. The jury returned a verdict of guilty on both counts.

The parties have filed memoranda regarding the Rule 29(a) motion. Dkt. Nos. 58, 59. Oral argument was heard on December 22, 2011, in Utica, New York.

## II. FACTUAL BACKGROUND

In April 2011, co-defendant Cheyenne Anderson ("Anderson") was involved in a criminal organization that smuggled drugs and undocumented persons across the United States—Canada border through the Akwesasne Mohawk Indian Reservation ("the Reservation") in northern New York state. At trial, Anderson testified that the masterminds of this organization were Daisy Realza ("Perla") and Dallas George ("Dallas"). Anderson also noted that Perla "wore the pants" and primarily directed the drug-smuggling operations.

On April 16, 2011, a United States Border Patrol agent was conducting patrol on Route 37 near the Reservation. At about 5:00 p.m., the agent observed Hakimi driving a rented silver Chevrolet Malibu. Because rental vehicles are often used in drug and human trafficking in this particular area, and due to defendant's nervous reaction at the sight of a patrol car, the agent followed him as he entered a nearby Walmart shopping center parking lot. Over the course of the next several hours,

various agents conducted surveillance of the defendant. He remained in the Walmart and an adjacent Subway restaurant, exiting the building at least once to access his rental car. While in the Walmart and restaurant, defendant did not order any food and was observed sitting alone using a cellular phone.

At approximately 9:00 p.m.—over four hours after he arrived at Walmart—Hakimi exited the store and eventually got into his rental car. At trial, Anderson testified that she arrived at the Walmart, parked directly in front of the entrance, and walked inside to find the defendant. Anderson further stated that defendant followed her out of the store and got into the passenger side of her truck, where he remained for a brief time. After he returned to his rental car, defendant pulled out of the parking lot and followed Anderson's truck down a rural dead-end road. Anderson turned her truck around and pulled beside defendant's car. The lights on both vehicles were turned off. Anderson then got out of the truck, leaned into defendant's car, and began to converse with the defendant. At this time, agents converged on both vehicles. A bag containing over twenty pounds of foxy methoxy and ecstasy pills was found in Anderson's truck, and Hakimi and Anderson were both arrested.

Anderson ultimately pleaded guilty to conspiracy to possess with the intent to distribute and to distribute a controlled substance (Count One) and possession with the intent to distribute a controlled substance (Count Two), and she entered into a cooperation agreement with the government.

## III. *DISCUSSION*

### A. *Rule 29(a) Motion for a Judgment of Acquittal—Standard*

When considering a Rule 29(a) motion, a jury verdict must be upheld if " '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *United States v. Glenn,* 312 F.3d 58, 63 (2d Cir. 2002) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). The evidence must be viewed in the light most favorable to the government, with all reasonable inferences drawn in its favor. *Id.* The evidence must be considered in its totality, and every theory of innocence need not be negated. *Id.* Moreover, deference must be given "to the jury's assessment of witness credibility and the jury's resolution of conflicting testimony." *Id.* at 64. Direct evidence of guilt is not required; circumstantial evidence is sufficient "so long as guilt is established beyond a reasonable doubt." *Id.* However, if there is insufficient evidence in the record "to support a conclusion that, beyond a reasonable doubt, the defendant committed the crime charged," the jury verdict will be overturned. *Id.* Finally, "if the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, then a reasonable jury must necessarily entertain a reasonable doubt." *Id.* at 70.

### B. *Count One*

The legal requirements to convict a defendant of conspiracy have recently been summarized by the Second Circuit:

> To sustain a conspiracy conviction, the government must present some evidence from which it can reasonably be inferred that the person charged with conspiracy knew of the existence of the scheme alleged in the indictment and knowingly joined and participated in it. Where the crime charged is conspiracy, a conviction

cannot be sustained unless the Government establishes beyond a reasonable doubt that the defendant had the specific intent to violate the substantive statute. To convict a defendant as a member of a conspiracy, the government must prove that the defendant agreed on the essential nature of the plan, and that there was a conspiracy to commit a particular offense and not merely a vague agreement to do something wrong.

Once a conspiracy is shown to exist, the evidence sufficient to link another defendant to it need not be overwhelming. But suspicious circumstances are not enough to sustain a conviction for conspiracy, and mere association with those implicated in an unlawful undertaking is not enough to prove knowing involvement; likewise, a defendant's mere presence at the scene of a criminal act or association with conspirators does not constitute intentional participation in the conspiracy, even if the defendant has knowledge of the conspiracy.

*United States v. Lorenzo,* 534 F.3d 153, 159–60 (2d Cir.2008) (internal quotation marks, citations, and alterations omitted).

■ A defendant's knowing and willful participation in a conspiracy may be inferred from his presence at critical stages of the conspiracy that cannot be explained by happenstance, a lack of surprise when discussing the conspiracy with others, or evidence that he participated in conversations directly related to the conspiracy, possessed items important to the conspiracy, or expected to receive a share of the profits from the conspiracy. *United States v. Aleskerova,* 300 F.3d 286, 293 (2d Cir.2002).

■ The government put forth sufficient evidence to establish the existence of a conspiracy to smuggle drugs across the border, and arguably sufficient evidence to infer that Anderson, Perla, and Dallas engaged in a conspiracy to transport ecstasy to New York City. However, there is a complete lack of evidence with regard to Hakimi's knowledge and intent to participate in that conspiracy. The only evidence even remotely linking the defendant to the conspiracy is the testimony of Anderson, his physical presence at the scene of the arrest, and the two calls placed from his phone to Dallas. Even accepting Anderson's testimony as true, deferring to the jury's credibility determination, and making all inferences in the government's favor, there is simply no evidence indicating that defendant even knew of the conspiracy to distribute ecstasy, much less that he knowingly participated in such a conspiracy.

Anderson's testimony established the following: (1) Anderson, Perla, and Dallas were part of an organization that smuggled drugs and undocumented persons across the border through the Reservation; (2) Perla contacted Anderson late on the afternoon of April 16, 2011, and asked if she could "work" that evening; (3) Anderson took her mother's truck, picked up the drugs and her nephew; (4) Dallas told Anderson to meet a bald male wearing a blue sweatshirt at Walmart that evening but did not tell her why that person would be at Walmart; (5) Hakimi signaled to Anderson when she arrived at the Walmart and then sat in the passenger seat of her truck, near the blue duffel bag that contained the drugs; (6) Anderson told Hakimi that she "didn't want to do it at Walmart," and told him to follow her to a different location; (7) Hakimi got into his car and followed Anderson to a nearby dead-end road; (8) Hakimi told Anderson that he did not know where he was going and needed directions back to the Reservation; (9) Anderson got out of her truck, took Hakimi's GPS, and was about to input

an address into the device when the police surrounded them; (10) Hakimi did not have proper identification and needed to cross into Canada illegally through the Reservation; and (11) the bag of drugs remained in Anderson's truck throughout the incident.

There is nothing in this testimony from which a reasonable juror could draw an inference that the defendant knew Anderson had a bag of drugs in her truck or that he intended to take the drugs from Anderson to further the conspiracy. There is no evidence that the defendant participated in any conversations related to the drug conspiracy, took part in prior drug smuggling activities with this organization, possessed any items or drugs important to the conspiracy, or expected to receive any benefit monetary or otherwise from the drug conspiracy.

Moreover, Hakimi's presence at the scene can be attributed to innocent circumstances; to wit, his intention to be smuggled across the border into Canada. Indeed, Anderson acknowledged that the criminal organization she was affiliated with smuggled both drugs and undocumented persons across the border. She also testified that this particular Walmart parking lot was a popular place to pick up undocumented persons and that when the police came upon her and the defendant on the dead-end road she was in the process of giving him directions to a location on the Reservation, from which he would be smuggled across the border.

Finally, the two cellular phone calls between Hakimi and Dallas were both made hours *before* Perla and Anderson began scrambling to find someone to transport the drugs on April 16, 2011. A reasonable juror could therefore draw no inference about the defendant's knowledge of any plans to distribute these drugs from the phone calls. Moreover, there was no testi-mony regarding the substance of these phone calls. Hakimi and Dallas could more easily have discussed plans to smuggle Hakimi across the border than plans to smuggle a shipment of drugs to New York City with a value of between $250,000 and $900,000.

In short, there is no evidence that the defendant knew of the conspiracy to possess with the intent to distribute and to distribute ecstasy or that he knowingly joined such a conspiracy. His suspicious behavior at the Walmart, while admittedly indicative of illegal activity, is insufficient to establish his intent to join the drug conspiracy and is consistent with the conduct of an undocumented person attempting to illegally cross the border. *See Lorenzo*, 534 F.3d at 160 (defendant's suspicious transfer of $14,000 to a drug smuggler was consistent with participation in a variety of criminal offenses and insufficient to prove his intent to join the drug smuggling conspiracy).

Accordingly, the defendant's motion for a judgment of acquittal will be granted as to Count One.

### C. Count Three

■ To convict the defendant of Count Three, the government must prove beyond a reasonable doubt that he did some intentional act that was a substantial step toward possessing a controlled substance with the intent to distribute it on April 16, 2011. *See United States v. Rosa*, 11 F.3d 315, 337 (2d Cir.1993). Although the government need not prove that the defendant knew of the exact type or quantity of the drugs, it must establish that he believed the material he was trying to possess was some type of controlled substance. *See United States v. Andino*, 627 F.3d 41, 47 (2d Cir.2010).

As previously noted, Anderson testified that the defendant got in the passenger seat of her truck in front of the Walmart and that the blue bag containing the drugs was on the floor on the passenger side. However, there was no testimony that the defendant ever touched the blue bag, much less that he knew there were drugs inside the bag. The bag was not transparent and there was no testimony that it was open when the defendant sat in the passenger seat. Simply sitting near the bag of drugs is insufficient circumstantial evidence to prove Hakimi's knowledge and intent. *See United States v. Rodriguez*, 392 F.3d 539, 546–47 (2d Cir.2004) (fact that defendant had sat in the back seat of a car "in reasonable proximity" to where drugs were seized only moments later was insufficient to establish that the defendant had knowledge of the drugs, which were hidden inside a box).

Moreover, there was no evidence that Hakimi ever inquired about the drugs or made any statements implicating himself in an attempt to possess them. When the police initiated contact with the defendant and Anderson on the dead-end road, the drugs remained in Anderson's truck even though she was out of her vehicle and leaning into defendant's car. According to Anderson's testimony, the only conversation she and defendant had during their interaction on the dead-end road pertained to directions back to the Reservation. There is simply nothing in the record to indicate that the defendant knew Anderson had drugs in her truck, much less that he took a substantial step toward possessing them.

In short, there is no evidence that Hakimi knew Anderson had drugs in her truck or that he took a substantial step towards possessing the drugs. Accordingly, the defendant's motion for a judgment of acquittal will be granted as to Count Three.

## IV. CONCLUSION

Viewed in the light most favorable to the government, and making every possible inference in its favor, the evidence in its totality is insufficient to sustain the guilty verdicts. Instead, the evidence gives equal or nearly equal circumstantial support to a theory of innocence; to wit, the defendant went to the Walmart in order to meet up with someone sent by Dallas who was to provide him directions to a location on the Reservation from which he could sneak back into Canada illegally. This alone presents a reasonable doubt as to the defendant's guilt.

In addition, accepting all of Anderson's testimony as true, it indicates nothing about Hakimi's knowledge of the drug conspiracy or his state of mind with respect to the drugs that Anderson had in her vehicle. Other than being at the scene, there is really no evidence that the defendant had any knowledge of the drug conspiracy or knew Anderson had ecstasy in her vehicle. Being at the scene of a crime is not enough to support a conviction.

Therefore, no rational juror could conclude beyond a reasonable doubt that the defendant knowingly joined a conspiracy to possess with the intent to distribute a controlled substance or attempted to possess a controlled substance on April 16, 2011. Accordingly, defendant's Rule 29(a) motion for a judgment of acquittal will be granted.[1]

---

1. Although not considered in the above Rule 29(a) analysis because they speak more to the credibility of witnesses and weight of the evidence, there are several noteworthy omissions in the government's proof. For example,

three key witnesses were never called: Dallas, Perla, and Anderson's nephew. These persons were directly involved in the drug conspiracy and could have provided substantial critical testimony. However, the government

The defendant has not made a motion for a new trial pursuant to Federal Rule of Criminal Procedure 33, although only half of the fourteen-day window to file such a motion has passed. Therefore, as there is not any motion for a new trial before the court, a conditional order regarding a new trial cannot be made pursuant to Rule 29(d)(1). In light of the above rulings and that situation, the deadline to file such a motion pursuant to Rule 33 is hereby extended. In the event that the government appeals this ruling, and the Second Circuit reverses and reinstates the guilty verdicts, the defendant will have fourteen days after receiving notice of the Second Circuit's Mandate to file a motion for a new trial.

Therefore, it is

ORDERED that

1. Defendant Roohid Hakimi's motion for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(a) is GRANTED;

2. The jury verdict is set aside; and

3. The superseding indictment is DISMISSED as against defendant Roohid Hakimi.

IT IS SO ORDERED.

The Clerk of the Court is directed to enter a judgment of acquittal accordingly.

## ORDER

On December 22, 2011, defendant Roohid Hakimi's motion for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(a) was granted, and the superseding indictment was dismissed as to him. Dkt. Nos. 61, 62. Defendant was then remanded to the custody of the United States Marshals Service ("USMS") pending transfer of custody to the United States Immigration and Customs Enforcement ("ICE"). On December 23, 2011, the government filed a notice of appeal of the judgment of acquittal. Dkt. No. 65. That same day the government also filed an emergency motion for reconsideration of defendant's release. Dkt. No. 66.

The government requests the issuance of a bench warrant for Hakimi's arrest, followed by a detention hearing to determine whether defendant should be detained or released pending the appeal pursuant to 18 U.S.C. §§ 3142(f) and 3143(c). Although not explicitly stated on the record, the factors outlined in § 3142(g) were considered prior to the decision to remand the defendant to the custody of the USMS pending his transfer to ICE. Specifically considered was the almost complete lack of evidence linking defendant to the crimes charged; the fact that although the charges against him involved controlled substances, no violence or weapon was involved; his lack of a criminal history in the United States; the pending immigration detainer; and the fact that he is wanted in Canada for attempted murder. These factors guided the decision to remand the defendant to the USMS pending his transfer to ICE and eventual extradition to Canada to face the attempted murder charges.

never called them as witnesses nor explained their absence. Similarly, the defendant never requested a missing witness instruction. Further, even though the Border Patrol agents testified that they conducted surveillance outside the Walmart for over four hours and watched Hakimi's movements, none of the agents—whose testimony was significantly more credible than Anderson's—corroborate Anderson's claim that Hakimi exited the Wal-

mart and got into the passenger side of her truck in front of the store. Moreover, the government did not offer any surveillance footage from the store's cameras or a mug shot of the defendant to corroborate Anderson's account and description of Hakimi. Again, these factors did not impact the Rule 29(a) analysis, but they highlight the weakness of the evidence against Hakimi.

In order to prevail on a motion for reconsideration, "[t]he moving party must 'point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" *United States v. Bocio*, 105 F.Supp.2d 1, 2 (N.D.N.Y.2000) (Kahn, J.) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir.1995)). The three grounds upon which such a motion may be granted include: "(1) an intervening change in controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct a clear error of law or prevent manifest injustice." *Id.* (internal quotation marks omitted).

The government does not satisfy this standard. There has been no intervening change in controlling law, nor has new evidence been identified. In short, the government does not point to any information that was overlooked or could reasonably be expected to alter the decision to remand the defendant to the USMS pending his transfer to ICE.

Therefore, it is ORDERED that the government's motion for reconsideration (Dkt. No. 66) is DENIED.

IT IS SO ORDERED.