22-1387-cr
*United States v. Hewitt*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

*Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.*

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 29th day of September, two thousand twenty-three.

PRESENT:    GUIDO CALABRESI,
            STEVEN J. MENASHI,
            BETH ROBINSON,
                *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

      *Appellee,*

   v.                                                          No. 22-1387

MICHAEL HEWITT,

      *Defendant-Appellant.*[*]

_____

_____

[*] The Clerk of Court is directed to amend the caption as set forth above.

*For Appellee*: David C. James and Michael W. Gibaldi, Assistant United States Attorneys, *for* Breon Peace, United States Attorney for the Eastern District of New York, Brooklyn, NY.

*For Defendant-Appellant*: Matthew Galluzzo, The Law Office of Matthew Galluzzo PLLC, New York, NY.

Appeal from a judgment entered in the United States District Court for the Eastern District of New York (Vitaliano, J.).

Upon due consideration, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Michael Hewitt appeals from a judgment of conviction entered on June 17, 2022, by the United States District Court for the Eastern District of New York. After a jury trial, Hewitt was found guilty of conspiracy to distribute controlled substances in violation of 21 U.S.C. § 846 and possession of methamphetamine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(viii). We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

## I

Hewitt first argues that the district court wrongly denied his pre-trial motion to suppress evidence seized from the car he was driving at the time of his arrest for lack of probable cause. Hewitt and several others were arrested during an apparent drug deal taking place in Hewitt's car. Law enforcement agents had been intercepting the communications of Hewitt's co-defendants Steven Seaforth and Bonzelle Nimmons. The communications indicated that Hewitt had traveled from the Niagara Falls area to New York City to purchase narcotics, and he had arranged to complete the transaction at a location in the Bronx. Law enforcement

agents followed Nimmons's car to that location. When Hewitt arrived, they arrested Hewitt and several others. The agents searched Hewitt's car and seized cash, cell phones, and a clear plastic bag containing 293 yellow pills. The pills were later found to contain methamphetamine.

"We review a district court's ruling on a suppression motion for clear error as to factual findings and *de novo* as to legal issues, including probable cause and the applicability of the vehicle exception." *United States v. Bodnar*, 37 F.4th 833, 839 (2d Cir. 2022). "Under the 'automobile exception' to the Fourth Amendment warrant requirement, police may conduct a warrantless search of a readily mobile motor vehicle if probable cause exists to believe the vehicle contains contraband or other evidence of a crime." *United States v. Gaskin*, 364 F.3d 438, 456 (2d Cir. 2004). Probable cause exists when the totality of the circumstances, "viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime." *Florida v. Harris*, 568 U.S. 237, 248 (2013); *see also United States v. Harwood*, 998 F.2d 91, 96 (2d Cir. 1993) ("The quest for probable cause requires a practical, common-sense decision, whether given all the circumstances there is a fair probability that contraband will be found in a particular place.") (internal quotation marks and alterations omitted). Moreover, "experience and training may allow a law enforcement officer to discern probable cause from facts and circumstances where a layman might not." *Gaskin*, 364 F.3d at 457.

Hewitt argues that no probable cause existed because the law enforcement agents had relied on "guesswork and speculation" in concluding that the intercepted communications referred to drugs. Appellant's Br. 20. According to Hewitt, the parties had used coded language that did not expressly refer to narcotics. This argument is meritless. Hewitt and his co-defendants had used recognized slang terms for MDMA, including "molly" and "g lady's." Gov't App'x 18-19. They had also used other terms—"pink and yellow lips," "yellow diamonds," and "Chanels"—that, according to the government's trial testimony, also refer to controlled substances. *Id.* at 19.

3

We agree with the district court that probable cause existed to search Hewitt's car. Law enforcement agents had intercepted numerous phone calls and text messages between Hewitt, Seaforth, Nimmons, and others negotiating an apparent drug deal. The agents knew that Seaforth and Nimmons were drug dealers.[1] The agents also knew that Nimmons's car, which the agents had followed to the location of the arrest, had been used in previous drug deals. The "totality of the circumstances" here made it likely that "a search would reveal contraband or evidence of a crime." *Harris*, 568 U.S. at 244, 248.

## II

Hewitt next argues that the district court wrongly denied his Rule 29 motion for a judgment of acquittal. As to the first count, Hewitt contends that the government provided insufficient evidence that he knowingly entered a conspiracy to distribute methamphetamine because the evidence showed only that he intended to purchase MDMA. As to the second count, Hewitt contends that the government presented insufficient evidence that he actually possessed a controlled substance and that he intended to distribute it.

"We review *de novo* a district court's order denying a Rule 29 motion addressing the sufficiency of the evidence." *United States v. Klein*, 913 F.3d 73, 78 (2d Cir. 2019). In doing so, "we apply the same deferential standard as the district court in assessing the trial evidence, *i.e.*, we view that evidence in the light most favorable to the government, assuming that the jury resolved all questions of witness credibility and competing inferences in favor of the prosecution." *United*

---

[1] Hewitt also argues that no probable cause existed because the "government presented no evidence in its motion response that Mr. Hewitt had any direct contact with Mr. Nimmons … before their arrest." Appellant's Br. 19-20. The government's opposition to Hewitt's pre-trial motion did not mention any direct communications between Hewitt and Nimmons. However, the trial record and the government's appellate brief show that the government had intercepted phone calls and text messages between Hewitt and Nimmons on February 26, 2017. *See* Gov't Br. 9; *see also*, *e.g.*, Gov't App'x 23 ("Yo 10 mins away meet me by PINSTRIPE BAR.").

*States v. Abu-Jihaad*, 630 F.3d 102, 134 (2d Cir. 2010). "A defendant mounting a sufficiency challenge thus bears a very heavy burden because a court must uphold a jury verdict so long as *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 135 (internal quotation marks and citation omitted).

## A

Hewitt argues that the government failed to prove that he knowingly joined a conspiracy to possess or to distribute methamphetamine because the evidence shows that Hewitt intended to purchase MDMA. Hewitt argues that—if anything—the evidence shows that Hewitt sought to purchase MDMA but was "misled" by Nimmons who delivered pills containing methamphetamine instead. Appellant's Br. 25.

Hewitt's argument fails because "the government need not prove *scienter* as to drug *type* or *quantity* when a defendant personally and directly participates in a drug transaction underlying a conspiracy charge." *United States v. Andino*, 627 F.3d 41, 47 (2d Cir. 2010). The only scienter requirement here is that Hewitt "knowingly joined a conspiracy to possess and distribute a controlled substance." *Id.* at 45. The government was not required to prove that Hewitt "specifically conspired to possess and distribute" methamphetamine. *Id.* The jury was thus correctly instructed in accordance with *Andino*, and there was sufficient evidence for it to find that Hewitt had conspired to distribute "a controlled substance of one type or another." *Id.* at 47.

## B

Hewitt also argues that there was insufficient evidence to prove that he possessed methamphetamine with intent to distribute it. This argument fails because it merely puts forth alternative, non-exculpatory interpretations of the evidence presented but does not undercut the sufficiency of that evidence.

Hewitt contends that the evidence does not necessarily show that he "actually possessed" the drugs. Appellant's Br. 32. Hewitt proffers other "straightforward explanation[s]" of the evidence—perhaps Hewitt never took ownership of the drugs, or perhaps he "possessed those drugs for himself, and had no intention to distribute them to Mr. Nimmons." *Id.*

Hewitt similarly contends that the evidence does not necessarily show that he intended to distribute the drugs. The government presented trial testimony that 293 pills are consistent with distribution because that number includes enough doses to "serve up almost an entire concert venue." App'x 340. Hewitt responds that it is not "impossible for that quantity of narcotics to be for personal use over a longer period." Appellant's Br. 31. The government also presented records from Hewitt's phone indicating that Hewitt was a drug dealer. These included texts in which Hewitt wrote that he sells ecstasy pills and that Pablo Escobar, a drug lord, is his role model. Hewitt responds that in these text messages, he "only claimed to sell [MDMA], not methamphetamine, and he was just plainly attempting to impress a woman by comparing himself to the infamous Pablo Escobar." *Id.*

These alternative explanations do not provide a basis for a judgment of acquittal because the explanations address the interpretation—not the weight—of the evidence presented. The "task of choosing among permissible competing inferences is for the jury, not a reviewing court." *United States v. Florez*, 447 F.3d 145, 155 (2d Cir. 2006). "[T]he Government is not required to preclude every reasonable hypothesis which is consistent with innocence." *United States v. Ogando*, 547 F.3d 102, 107 (2d Cir. 2008) (internal quotation marks omitted). Moreover, when we review a jury verdict, we resolve all "competing inferences in favor of the prosecution." *Abu-Jihaad*, 630 F.3d at 134.

We agree with the district court that the government presented enough evidence to allow a "rational trier of fact [to] have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* at 135 (quoting *United States v. Stewart*, 590 F.3d 93, 109 (2d Cir. 2009)). As the district court observed, the evidence showed

that "Hewitt discussed purchasing 300 MDMA pills …, then drove clear across the state of New York from Niagara Falls to the Bronx, … and was caught red-handed with a bag of 293 pills in the center console of a car he was driving, with Nimmons counting money in the back seat." App'x 812.

## III

Finally, Hewitt argues that the district court wrongly denied his Rule 33 motion for a new trial. Hewitt argues that a new trial is warranted because of the "evidentiary shortcoming[s]" identified in his motion for a judgment of acquittal and because the government made misrepresentations in an application for a cell-site warrant submitted prior to Hewitt's arrest and in the complaint. Appellant's Br. 35.

"We review challenges to a district court's denial of a Rule 33 motion for abuse of discretion." *United States v. Escalera*, 957 F.3d 122, 137 (2d Cir. 2020). A Rule 33 motion for a new trial is granted "sparingly and in the most extraordinary circumstances." *United States v. Archer*, 977 F.3d 181, 187 (2d Cir. 2020) (internal quotation marks omitted) (quoting *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001)). It is "only in exceptional circumstances, where there is a real concern that an innocent person may have been convicted, that a court may intrude upon the jury function … and grant a Rule 33 motion." *United States v. Landesman*, 17 F.4th 298, 330 (2d Cir. 2021) (internal quotation marks omitted). "The ultimate test is whether letting a guilty verdict stand would be a manifest injustice." *United States v. Aguiar*, 737 F.3d 251, 264 (2d Cir. 2013) (alteration omitted) (quoting *Ferguson*, 246 F.3d at 134).

The district court did not abuse its discretion in denying Hewitt's motion for a new trial. The purported evidentiary shortcomings do not indicate that "the evidence preponderates [so] heavily against the verdict … that it would be 'manifest injustice' to let the verdict stand." *Archer*, 977 F.3d at 188. Nor does the possibility that the government misstated facts in the cell-site warrant application and complaint give rise to "manifest injustice" if a new trial is not granted. The

warrant application and complaint both stated that a February 23 wire transfer from Hewitt's friend Chanel Groom to Seaforth in the amount of $4,100 was payment for the upcoming drug transaction. Hewitt argues that the wire transfer was not relevant to that transaction—and the government should have known it was not relevant—because the wiretap showed that Nimmons had previously quoted a price of $2,600. When questioned at trial, ATF Special Agent Martin testified that at the time he made those statements, he believed that the $4,100 was for the upcoming transaction. Even if the government's statements were inaccurate, there is no indication that those statements so affected the validity of the evidence presented or the jury's verdict that "it would be 'manifest injustice' to let the verdict stand." *Id.* It is not even clear how a new trial would cure any prejudice from the government's statements, given that Hewitt does not argue that those statements trigger the exclusionary rule.[2]

\* \* \*

---

[2] Hewitt argues that the Rule 33 motion should be granted as a "sanction" for the government's "dishonest[] … or sloppy investigative work." Appellant's Br. 35. Hewitt cites *Franks v. Delaware*, 438 U.S. 154 (1978), for support. But *Franks* did not involve Rule 33. It considered when a false statement made by an affiant for a search warrant triggers the exclusionary rule. Hewitt does not argue that the exclusionary rule applies here. Even if he did, such an argument would fail because there is no indication of a "deliberate falsehood or reckless disregard for the truth" or that "the alleged falsehoods … were necessary to the issuing judge's probable cause … finding." *United States v. Rajaratnam*, 719 F.3d 139, 146 (2d Cir. 2013) (alteration omitted) (quoting *United States v. Canfield*, 212 F.3d 713, 717-18 (2d Cir. 2000)).

8

We have considered Hewitt's remaining arguments, which we conclude are without merit. For the foregoing reasons, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court